### CULVER v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 1, 1919.)

No. 5193.

CRIMINAL LAW ⬥1170½(6)—REVIEW—PREJUDICIAL ERROR—CROSS-EXAMINATION OF DEFENDANT.

In a criminal prosecution for using the mails to defraud, it was prejudicial error to permit counsel for the government, on cross-examination of defendant, to inquire as to the property he owned at the time of the alleged offense and at the time of trial, even though some of such questions were excluded.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Criminal prosecution by the United States against John Culver. Judgment of conviction, and defendant brings error. Reversed.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

W. J. Crump, of Muskogee, Okl., for plaintiff in error.

C. W. Miller, Sp. Asst. U. S. Atty., of Muskogee, Okl. (W. P. McGinnis, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Before SANBORN and STONE, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. John Culver, one of the defendants below in this case, complains of error in his trial and conviction for devising a scheme to use the mails to defraud J. Moncrief, who, under the names of the Dyer-Bates Company of Winfield, Kan., and the Winfield Nursery Company, a corporation, owned and was selling nursery stock. On May 10, 1915, Moncrief made a contract with E. J. Luce, who was indicted and convicted with Culver, to furnish to him, at prices specified, nursery stock to fill orders to be taken by him from third parties on blanks to be provided by Moncrief, and Luce agreed to procure all his nursery stock from Moncrief, to pay him 10 per cent. interest on money he borrowed from Moncrief, and not to ask him for a loan of more than 20 per cent. of the orders he turned in. Under this contract Luce procured orders for nursery stock, turned them over to Moncrief, and borrowed from him or procured advances from him of about 20 per cent. of the amount of the orders for nursery stock. Culver was employed by Luce on a commission, or on a salary, or in some other way, to procure some of these orders which Luce caused to be mailed to Moncrief.

The scheme to defraud, which the government alleged in the indictment that Luce and Culver devised, was to obtain forged or otherwise worthless orders for nursery stock, to represent that the orders were genuine and valuable, that the makers were real persons when they were fictitious persons, that they were financially responsible when they were not, and to borrow 20 per cent. of the amounts of the orders, and never to pay it back. There was a long trial, and much conflicting testimony regarding the orders that were obtained, and the character of them, but no testimony regarding the property of Culver or his financial responsibility, nor was he a party to the contract between Moncrief and Luce. After the plaintiff had rested its case in chief, and Culver had testified for the defense upon his examination by his counsel, who asked him nothing about his property, counsel for the government on his cross-examination inquired of him whether or not he owned property of his own in Muskogee, where he lived in the summer of 1915, when these orders for nursery stock were taken. He answered that he did not. Asked if he then owned his own home, he answered that he did not. Asked if he owned considerable property at the time of his examination, he answered, "Well, right smart; yes." Asked if he owned his own home in Muskogee, he answered, "Yes, sir." Asked if he owned several farms, he answered, "Yes, sir." Asked how many farms he owned, his counsel objected to this question as incompetent, irrelevant, and immaterial. The court overruled the

objection, and the defendant answered, "Well, about one." The examination then proceeded in this way:

"Q. You own quite a lot of city property? A. Well, I can't say that; I—I own some; yes, sir.

"Q. What do you value your present property at? A. Well, I have never—

"Mr. Crump (counsel for Mr. Culver): I want to renew my objection, if your honor please.

"The Court: Objection sustained.

"Q. You recently bought one farm that you paid about something over $20,000 for, did you not?

"Mr. Crump: I object to that as incompetent, irrelevant, and immaterial.

"The Court: Sustained.

"Q. You have two automobiles for private use? A. I have not—

"Mr. Crump: I object to that, if your honor please.

"The Court: Sustained.

"Q. What business have you been engaged in since 1915 to the present time? A. Real estate.

"Q. You have accumulated all this money in the course of your business? A. Well, pretty well all of it.

"Q. Most all of it? A. Yes.

"Q. Well, just please state to the court how you acquired the principal part of the property that you have at this time.

"Mr. Crump: I object as incompetent, irrelevant, and immaterial, and not tending to prove any issue in this case.

"The Court: Sustained."

The first ruling of the court, that it was competent, relevant, and material in this case for the government to show how many farms Mr. Culver owned, was clear error. That issue was not in the case, and the number of farms he owned had no relevancy to the issues that were in the case. The court properly ruled upon the next question, that the value of Mr. Culver's property was immaterial, and the subsequent questions of the counsel for the government, such as "You recently bought one farm that you paid something over $20,000 for?" and "You have two automobiles for private use?" constituted a clear and injurious abuse of the right of examination of this witness. The entire examination upon this subject was clearly inspired for the purpose of, and intended to lodge in the minds of the jury by insinuation, the idea that Mr. Culver had accumulated property by means of the alleged fraudulent scheme charged in the indictment. It was error to enter upon the examination, it was error to permit any evidence on the subject, and the error here permitted cannot fail, in our opinion, to have prejudiced the defendant in the trial of his case.

The judgment below is accordingly reversed, and the case is remanded to the court below for a new trial.